| UNITED STATES DISTRICT COURT | SOUTHERN DISTRICT OF TEXAS HOUSTON DIVISION |
|---|---|

| | |
|---|---|
| GIUSEPPE SCARVAGLIERI, § § *Plaintiff(s)*, § § v. §     No. _____ § SEADRILL AMERICAS, INC., § § *Defendant(s)*. § | |

# PLAINTIFF GIUSEPPE SCARVAGLIERI'S ORIGINAL COMPLAINT

Plaintiff Giuseppe Scarvaglieri (referred to as "Scarvaglieri") brings this action against Defendant Seadrill Americas, Inc. (referred to as "Seadrill") the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101-12213 ("ADA").

## I. Nature of Suit

1. Scarvaglieri's claims arise under the ADA.

2. The ADA was enacted to, among other things, "provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities[]" and to "address the major areas of discrimination faced day-to-day by people with disabilities[]" and to prohibit retaliation based on ADA-protected activity. 42 U.S.C. §§ 12101(b)(1), (4), 12203; *see also*, 29 C.F.R. §§ 1630.1(a), 1630.12.

3. Seadrill violated the ADA by (1) discriminating against Scarvaglieri on based on his disability; (2) harassing Scarvaglieri based on his disability; and (3) retaliating against Scarvaglieri based on ADA-protected activity. *See*, 42 U.S.C. §§ 12112(a), (d)(4)(A), 12203.

## II. Jurisdiction & Venue

4. This action arises under a federal statute, the ADA. 28 U.S.C. § 1331 (federal-question jurisdiction).

5. Venue is proper in this district and division because Seadrill resides in this district and division. 28 U.S.C. § 1391(b)(1).

## III. Parties

6. Scarvaglieri is an individual who resides in Hillsborough County, New Hampshire and who was employed by Seadrill.

7. Seadrill is a is a Texas Corporation that may be served with process by serving its registered agent:

> CT Corporation System
> 1999 Bryan Street, Suite 900
> Dallas, Texas 75201-3140

Alternatively, if the registered agent of Seadrill cannot with reasonable diligence be found at the company's registered office, Seadrill may be served with process by serving

the Texas Secretary of State. *See*, Tex. Bus. Org. Code §§ 5.251-5.254; *see also*, Tex. Civ. Prac. & Rem. Code § 17.026.

8. An allegation that Seadrill committed any act or omission should be construed to mean the company's officers, directors, vice-principals, agents, servants or employees committed such act or omission and that, at the time such act or omission was committed, it was done with the full authorization, ratification or approval of Seadrill or was done in the normal course and scope of employment of Seadrill's officers, directors, vice-principals, agents, servants or employees.

### IV. Facts

9. Seadrill is an oilfield services company that provides, among other things, offshore drilling services.

10. Seadrill does business in the territorial jurisdiction of this Court.

11. Seadrill employed Scarvaglieri from December 10, 2014, to August 4, 2020.

12. During Scarvaglieri's employment with Seadrill, the company had fifteen or more employees for each working day in each of twenty or more calendar weeks.

13. Seadrill employed Scarvaglieri as a senior dymanic positioning operator.

14. During Scarvaglieri's employment with Seadrill, he had a disability (attention deficit disorder).

15. During Scarvaglieri's employment with Seadrill, he was qualified for his job; in fact, his performance evaluations were typically above average.

16. During Scarvaglieri's employment with Seadrill, he worked on offshore oil and gas rigs.

17. On August 8, 2016, Scarvaglieri was notified by the rig medic that the medication (Adderall) that was prescribed by his doctor as part of the treatment for his disability was not approved by the company's doctor; he told Scarvaglieri to switch medications.

18. After consultation with his doctor—and because Seadrill knew about Scarvaglieri's condition and the medication he was taking for it when he was hired (and had no problem with it)—he refused.

19. A few days later and after escalating his situation to the corporate medical director, Seadrill "approved [Scarvaglieri] to continue to work taking [Adderall]."

20. On May 8, 2017, Seadrill requested a copy of Scarvaglieri's prescription and photos of the label on the medication; he promptly provided everything that the company requested.

21. The next year, on May 25, 2018, a restriction was placed on Scarvaglieri's offshore medical certificate, again related to the Adderall.

22. Scarvaglieri was instructed to provide documentation that he previously provided to Seadrill when he was initially hired.

23. After some discussions with a human resources representative, the restriction was lifted.

24. On April 13, 2020, during a conversation with the company's doctor, Scarvaglieri was told—in spite of his well-documented history with Seadrill on this issue—that more than a single pill of Adderall was "illegal at Seadrill."

25. Scarvaglieri was, though, on the lowest dose of Adderall possible.

26. On June 6, 2020, Scarvaglieri took a drug test on the rig.

27. Because Scarvaglieri was taking Adderall as prescribed, the test came back positive.

28. Scarvaglieri did not think this would be a problem because Seadrill had a copy of his then-current prescription for Adderall.

29. To his surprise, a woman who worked with the company's doctor requested that he provide a twelve-month prescription history.

30. That was the first time that anyone requested that much information, and the explanation given to Scarvaglieri—that they need a twelve-month history of his prescriptions to pre-approve him for the next twelve months—did not make sense.

31. After questioning the request, a human resources representative responded that the twelve-month history was required because Seadrill's doctor was conducting "a federal drug screening."

32. That, though, was not a "federal" drug screening.

33. So far as Scarvaglieri knew, it was not required by the Code of Federal Regulations.

34. In fact, the United States Coast Guard had issued Scarvaglieri a medical certificate to work offshore (and renewed it multiple times) all while he was taking Adderall, and it did so without hesitation or causing any difficulty for him.

35. In any event, Scarvaglieri once again provided Seadrill and its doctor with detailed documentation regarding his disorder and the Adderall prescription.

36. Scarvaglieri provided a letter from his doctor describing his treatment for attention deficit disorder from as early as 2014, and he provided a letter from a health professional detailing his prescription history for the preceding twelve months.

37. He also explained that his doctor was available to speak with the company's doctor, and he requested the company doctor's availability in order to schedule a meeting.

38. But none of that would do.

39. On July 6, 2020, Scarvaglieri emailed the rig manager, a human resources representative, and others to file a complaint against the company's doctor.

40. Scarvaglieri said, "If there is something I can do, that I have not done to file an official harassment claim on Dr. Thibodeaux[, the company doctor,] I would like to. I used to think that we didn't need … laws to protect people [with] disabilities. But he is the perfect reason why they have these laws in place."

41. No one responded to that email, and the harassment continued.

42. On July 9, 2020, Scarvaglieri again emailed human resources about the way he was being treated; he explained that "[he] consulted with an [a]ttorney, and [that the way he was being treated] violates the Americans with Disabilities Act."

43. Scarvaglieri also told the human resources representative that Seadrill had "received enough information to clear [him] for work[]" and that "[his] U.S. Coast Guard [m]edical [c]ertificate was renewed this past January … ."

44. On July 14, 2020, Scarvaglieri received a response that, in spite of all that he had done, he was not cleared to return to work.

45. Ultimately, Seadrill terminated Scarvaglieri on account of his disability and in retaliation for engaging in ADA-protected activity, on August 4, 2020.

46. Seadrill acted with malice or reckless indifference to its employees' federally protected rights, including Scarvaglieri's federally protected rights, under the ADA.

47. Seadrill is liable to Scarvaglieri for his reasonable attorney's fees (including expert fees). *See*, 42 U.S.C. § 12205.

## V. Count One—
## Discrimination Based on Disability in Violation of
## 42 U.S.C. § 12112(a)

48. Scarvaglieri adopts by reference all of the facts set forth above. *See*, Fed. R. Civ. P. 10(c).

49. Seadrill employed Scarvaglieri from December 10, 2014, to August 4, 2020, as a senior dynamic positioning operator.

50. During Scarvaglieri's employment with Seadrill, the company was covered by the ADA.

51. Under the ADA, an employer commits an unlawful employment practice if it discriminates against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).

52. During Scarvaglieri's employment with Seadrill, he had a disability (attention deficit disorder).

53. During Scarvaglieri's employment with Seadrill, he was qualified for his job.

54. By refusing to permit him to work because of his attention deficit disorder, Seadrill discriminated against Scarvaglieri based on his disability.

55. Seadrill acted with malice or reckless indifference with respect to the ADA violation(s) described above.

56. As a result of the ADA violation(s) described above, Seadrill is liable to Scarvaglieri for compensatory damages (emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses, both in the past and in the future) and punitive damages, back pay (including interest on back pay), front pay and attorney's fees (including expert fees) under ADA. *See*, 42 U.S.C. §§ 1981a(a)(2), 1981a(b), 2000e-5, 12117(a), 12203, 12205.

## VI.  Count Two—
## Harassment Based on Disability in Violation of
## 42 U.S.C. § 12112(a)

57. Scarvaglieri adopts by reference all of the facts set forth above. *See*, Fed. R. Civ. P. 10(c).

58. Seadrill employed Scarvaglieri from December 10, 2014, to August 4, 2020, as a senior dynamic positioning operator.

59. During Scarvaglieri's employment with Seadrill, the company was covered by the ADA.

60. Under the ADA, an employer commits an unlawful employment practice if it discriminates against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).

61. During Scarvaglieri's employment with Seadrill, he was subjected to unwelcome harassment based on his disability.

62. The harassment affected a term, condition or privilege of Scarvaglieri's employment with Seadrill.

63. Seadrill knew or should have known of the harassment and failed to take prompt, remedial action.

64. Seadrill acted with malice or reckless indifference with respect to the ADA violation(s) described above.

65. As a result of the ADA violation(s) described above, Seadrill is liable to Scarvaglieri for compensatory damages (emotional pain, suffering, inconvenience,

mental anguish, loss of enjoyment of life, and other nonpecuniary losses, both in the past and in the future) and punitive damages, back pay (including interest on back pay), front pay and attorney's fees (including expert fees) under ADA. *See*, 42 U.S.C. §§ 1981a(a)(2), 1981a(b), 2000e-5, 12117(a), 12203, 12205.

## VII. Count Three—
### Retaliation Based on ADA-Protected Activity in Violation of 42 U.S.C. § 12203

66. Scarvaglieri adopts by reference all of the facts set forth above. *See*, Fed. R. Civ. P. 10(c).

67. Seadrill employed Scarvaglieri from December 10, 2014, to August 4, 2020, as a senior dynamic positioning operator.

68. During Scarvaglieri's employment with Seadrill, the company was covered by the ADA.

69. By terminating him for complaining about ADA discrimination and harassment, Seadrill retaliated against Scarvaglieri on the basis of ADA-protected activity.

70. Seadrill acted with malice or reckless indifference with respect to the ADA violation(s) described above.

71. As a result of the ADA violation(s) described above, Seadrill is liable to Scarvaglieri for compensatory damages (emotional pain, suffering, inconvenience,

mental anguish, loss of enjoyment of life, and other nonpecuniary losses, both in the past and in the future) and punitive damages, back pay (including interest on back pay), front pay and attorney's fees (including expert fees) under ADA. *See*, 42 U.S.C. §§ 1981a(a)(2), 1981a(b), 2000e-5, 12117(a), 12203, 12205.

## VIII. Count Four—
### Attorney's Fees Under 42 U.S.C. § 12205

72. Scarvaglieri adopts by reference all of the facts set forth above. *See*, Fed. R. Civ. P. 10(c).

73. Scarvaglieri is authorized to recover attorney's fees (including expert fees) on his claims by statute. *See*, 42 U.S.C. § 12205.

74. Scarvaglieri has retained the professional services of the undersigned attorneys.

75. Scarvaglieri has complied with the conditions precedent to recovering attorney's fees.

76. Scarvaglieri has incurred or may incur attorney's fees in bringing this lawsuit.

77. The attorney's fees incurred or that may be incurred by Scarvaglieri were or are reasonable and necessary.

78. Seadrill is liable to Scarvaglieri for attorney's fees (including expert fees) by reason of the ADA violations described above. *See*, 42 U.S.C. § 12205.

## X. Conditions Precedent

79. All conditions precedent have been performed or have occurred. *See*, Fed. R. Civ. P. 9(c).

## XI. Relief Sought

80. Scarvaglieri demands the following relief:

    a. judgment against Seadrill in Scarvaglieri's favor both for compensatory damages (emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses, both in the past and in the future) and punitive damages, back pay (including interest on back pay), front pay, attorney's fees (including expert fees), plus interest and costs; and

    b. all other relief and sums that may be adjudged against Seadrill in Scarvaglieri's favor.

Respectfully Submitted,

MOORE & ASSOCIATES
Lyric Centre
440 Louisiana Street | Suite 1110
Houston, Texas 77002-1055
Telephone: (713) 222-6775
Facsimile: (713) 222-6739


By: /s/ Melissa Moore
Melissa Moore
Tex. Bar No. 24013189
S.D. Tex. Bar No. 25122
melissa@mooreandassociates.net
Curt Hesse
Tex. Bar. No. 24065414
S.D. Tex. Bar No. 968465
curt@mooreandassociates.net

**ATTORNEYS FOR PLAINTIFF**